IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 06-cv-01502-MSK-BNB

CONNIE RICOTTA, and
BRUCE ROGERS,

       Plaintiffs,

v.

FINANCE AMERICA, LLC, DBA FINAM, LLC,
OCWEN LOAN SERVICING, LLC,
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,
DEUTSCHE BANK TRUST CO. AMERICAS/TA,
  f/k/a BANKERS TRUST COMPANY, ISAOA,
WELLS FARGO BANK, N.A., Successor by Merger to Wells Fargo Bank Minnesota, N.A., as
  Trustee f/k/a Norwest Bank Minnesota, N.A. as Trustee for the Holders of the Structured Asset
  Securities Corporation Amortizing Residential Collateral Trust Mortgage Pass-Through
Certificates, Series 2002-BC5,
CASTLE MEINHOLD & STAWIARSKI, LLC, and
UNKNOWN OWNER OF THE EVIDENCE OF THE DEBT AND/OR
  OWNER OF "THE NOTE",

       Defendants.
_____

**OPINION AND ORDER GRANTING, IN PART, MOTIONS TO DISMISS**
_____

**THIS MATTER** comes before the Court pursuant to Defendant Finance America LLC's

("FA") Motion for Summary Judgment **(# 53)**, the Plaintiffs' response **(# 69, 73)**, and FA's reply

**(# 80)**; and Defendant Castle Meinhold & Stawiarski, LLC's ("CMS") Motion to Dismiss **(# 77)**,

the Plaintiffs' response **(# 85)**, and CMS's reply **(# 87)**.

1

## FACTS

According to the *pro se* Amended Complaint **(# 46)**, the Plaintiffs are owners of real property located in Breckenridge, Colorado. They contend that although the Defendants claim that the Plaintiffs entered into a mortgage transaction with FA in January 2002, the Plaintiffs did not actually do so. They further assert, in the alternative, that if they did enter into such a transaction, that transaction was not secured by proper consideration. Moreover, the Plaintiffs contend that, under the Truth In Lending Act, 15 U.S.C. § 1635(a) and 12 C.F.R. § 226.23(a)(1), they were entitled to, and indeed that Plaintiff Rogers sought to rescind the transaction, but that FA refused to recognize the purported recision and release its interest in the real property.[1] Defendant Ocwen Loan Servicing, LLC ("Ocwen"), has informed the Plaintiffs that the loan – presumably the loan from FA – is now in default.

The Amended Complaint asserts six claims: (i) a claim to quiet title, asserted against all Defendants, alleging that the various Defendants claim an interest in the real property, and that the Plaintiffs' claim to the property is superior[2]; (ii) a claim against Ocwen for violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.*; (iii) a claim against Ocwen, CMS, and Defendant Wells Fargo under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692g(b), in that these Defendants refused to provide verification of the debt upon the Plaintiffs'

---

[1] The Amended Complaint acknowledges that Plaintiff Rogers was "not the borrower," and thus, his purported recision may have been ineffective. *Docket* # 46, ¶ 36. As a result, the Amended Complaint asserts, Plaintiff Rogers "acquiesced to the making of mortgage payments for over 3 years." *Id.*, ¶ 37.

[2] This claim makes additional allegations against Defendant Mortgage Electronic Registration Systems, Inc. that are not germane to the issues presently before the Court and will not be detailed herein.

request; (iv) a claim for breach of contract[3] against FA, in that "FA "failed to lend 'dollars' as defined by Act of Congress" as required by the parties' contract,[4] and that, by breaching the contract, FA "repudiated" it; (v) a claim of "unconscionability" against FA, in that terms in the contract between FA and the Plaintiffs were unreasonably favorable to FA in various respects; (vi) a claim of "unilateral mistake" against FA, in that "Plaintiffs mistook the meaning of 'dollars'" in the contract and that FA knew of the Plaintiffs' mistake; and (vii) a claim against all Defendants for breach of fiduciary duty, alleging that FA – among others– owed the Plaintiffs various fiduciary duties that it failed to perform.

FA filed a Motion to Dismiss or for Summary Judgment **(# 53)**, arguing that: (i) the quiet title claim should be dismissed, as FA claims no interest in the property; (ii) that any allegation that the written contract between the parties has been supplemented by oral terms is barred by the Statute of Frauds, C.R.S. § 38-10-124; (iii) that the breach of contract claim fails because the Plaintiffs' allegation that they were not actually loaned "money" fails to state a claim; (iv) that the claims of unconscionability and unilateral mistake are affirmative defenses to a claim of breach of contract, not direct claims that can be asserted by the Plaintiffs; and (v) that the breach of fiduciary duty claim fails because the Plaintiffs do not adequately allege a cognizable fiduciary duty existing between the parties.

---

[3]The breach of contract claim also asserts what are affirmative defenses to a claim for breach of contract, namely, that the contract was unconscionable, and that it was ambiguous.

[4]The crux of the Plaintiffs' position on this claim is that the contract called for the payment of "dollars" or "money," and that, the Plaintiff's allege, "money" only exists as "Federal Reserve Notes" that are "principal on someone else's loan." The Plaintiffs allege that there are not sufficient quantities of such Notes in circulation to permit them to pay off the loan.

The Plaintiffs responded **(# 69)**[5] to FA's motion, alleging that the Amended Complaint was sufficient; that the Plaintiffs needed leave to conduct discovery under Fed. R. Civ. P. 56(f); and that certain documents tendered by FA were not authentic.

CMS filed a Motion to Dismiss **(# 77)** pursuant to Fed. R. Civ. P. 12(b)(6), alleging that: (i) as to the quiet title claim, it asserts no claim to the property; (ii) as to the FDCPA claim, the Amended Complaint fails to establish that the Plaintiffs requested verification of the debt or that CMS failed to provide it; and (iii) as to the fiduciary duty claim, the Plaintiffs fail to adequately allege the existence of a fiduciary duty owed by CMS to them.

The Plaintiffs responded **(# 85)**, alleging that additional discovery is necessary to rebut CMS's contention that the Plaintiffs failed to request verification of the debt, and that additional discovery might disclose facts giving rise to the existence of a fiduciary duty owed to the Plaintiffs by CMS.

## ANALYSIS

**A. Standard of review**

In evaluating all of the pending motions, the Court has construed the *pro se* Plaintiffs' pleadings and filings liberally in conjunction with *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) and *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991). Liberal construction requires the Court to overlook the Plaintiffs' failure to cite proper legal authority, their confusion of various legal theories, their poor syntax and sentence construction, or their unfamiliarity with pleading requirements. *Hall*, 935 F.2d at 1110. However, *pro se* status does not relieve the Plaintiffs of the duty to comply with the various procedural rules or the requirements of the substantive law.

---

[5] Docket # 73 appears to be identical in content and substance to the Plaintiffs' response.

In this regard, the Court must treat the Plaintiffs according to the same standard as counsel licensed to practice law before the bar of this Court. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept all well-plead allegations in the complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001), *quoting Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Benefield v. McDowall,* 241 F.3d 1267, 1270 (10th Cir. 2001); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). Ordinarily, the Court must limit its review to the four corners of the complaint, but it may also consider documents attached to the complaint as exhibits, *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001), as well as unattached documents which are referred to in the complaint and central to the plaintiff's claim, so long as the authenticity of such documents is undisputed. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

**B. FA's Motion**

(i) Quiet Title claim

It is axiomatic that a plaintiff asserting a claim to quiet title in real property assert that claim against persons who claim a competing interest in title to the property. Logically, where a defendant disclaims any claim of title to the property, the quiet title claim may be dismissed as

against that party. *See e.g.* C.R.C.P. 105(c) (allowing party to disclaim interest in contested property and avoid costs). FA clearly asserts that it claims no interest in the real property at issue here, and thus, the quiet title claim against FA is dismissed.

### (ii) breach of contract claim

The essence of the Plaintiffs' breach of contract claim against FA is that the FA breached the contract by failing to lend "dollars" to the Plaintiffs. *Docket # 46, ¶ 95-100.* The Court need not devote significant analysis to the Plaintiffs' various and convoluted arguments that "dollars" are somehow distinct from "Federal Reserve Notes" or collateral contentions that FA lacked the ability to "loan" such Notes, as those assertions are patently frivolous. *See e.g. Zuger v. U.S.*, 834 F.2d 1009, 1010 (Fed. Cir. 1987) *and cases cited therein* (tax protestor's claim that Federal Reserve Notes were not "real money" was frivolous); *Callow v. Amerace Corp.*, 681 F.2d 1242 (9th Cir. 1982) ("The claim that federal reserve notes are not valid money, presented under a variety of theories, has been rejected by every court considering the claim"). Accordingly, the breach of contract claim is dismissed.

### (iii) unconscionability and unilateral mistake claims

FA is correct that the Plaintiffs' "claims" for unconscionability and unilateral mistake are, typically, affirmative defenses to a claim for breach of contract, and thus, inappropriate as direct claims by the Plaintiffs against FA. However, construing the Amended Complaint liberally in light of the Plaintiffs' *pro se* status, the Court could reasonably deem the Plaintiffs' assertion of these

defenses as a claim seeking a declaration that the contract between the Plaintiffs and FA is invalid, either on the grounds of unconscionability or unilateral mistake.[6]

In order to demonstrate that the contract was unconscionable, the Plaintiffs would be required to show overreaching by FA, such as that which results from an inequality of bargaining power or other circumstances suggesting an absence of meaningful choice on the part of the Plaintiffs, coupled with contract terms that are unreasonably favorable to FA.  *Davis v. M.L.G. Corp.*, 712 P.2d 985, 991 (Colo. 1986).  Although the Amended Complaint does purport to assert an inequality of bargaining power between themselves and the better-educated FA attorneys, *Docket* # 46, ¶ 115, the remainder of the allegations of unconscionability in the Amended Complaint return to variations of the patently frivolous arguments involving the value of the money supplied by FA.  *Docket* # 46, ¶ 109-120.  Because the Plaintiffs fail to sufficiently allege the necessary elements of a claim for declaratory relief that the contract was unconscionable, FA is entitled to dismissal of any such claim.

Similarly, the Plaintiffs' "claim" for unilateral mistake turns entirely on specious arguments that "Plaintiffs mistook the meaning of 'dollars.'"  FA is entitled to dismissal of any claim for declaratory relief premised upon an alleged unilateral mistake as well.

---

[6]Nevertheless, if the contract were invalidated, the parties would typically be required to restore each other to the position that they were in prior to the execution of the contract.  In this case, that would require the Plaintiffs to return the money loaned to them by FA in exchange for the cancellation of their indebtedness.  Given that the Plaintiffs are apparently in default on the loan, it is highly unlikely that they could repay the entire outstanding indebtedness to FA even if the contract were invalidated.

7

(iv)  fiduciary duty claim

Under Colorado law, a fiduciary duty generally does not exist between a lender and borrower unless and until the nature of the business relationship was such that it impelled or induced one party to relax the care and vigilance it would ordinarily exercise in dealing with a stranger.  *Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc.*, 872 P.2d 1359, 1365 (Colo. App. 1994).  For example, such a duty might arise where the borrower has reposed particular trust in the lender along with an acceptance or invitation of such trust on the part of the lender, *e.g.* where the lender and borrower also share a mutually-accepted relationship as advisor-advisee. *Id.*

Here, the Plaintiffs do not allege facts suggesting any repose of trust sufficient to create a fiduciary duty.  Rather, the bulk of the allegations directed at describing the basis for an alleged fiduciary relationship between the Plaintiffs and FA are, once again, arguments deriving from the frivolous contention that FA was not lending actual money to the Plaintiffs.  *Docket # 46, ¶ 132-137.*  The only other alleged basis for a fiduciary duty arising is that FA "owed Plaintiffs a duty to release the security interest when [it] received [Plaintiff Rogers'] rescission notice."  *Id.*, ¶ 138.  However, this allegation is insufficient to suggest that the Plaintiffs reposed any particular trust in FA, much less that FA invited or accepted such trust.  Indeed, the Plaintiffs expressly allege that they did not believe that FA would honor the purported rescission, and thus, they continued to make 3 years of payments on the loan thereafter.  *Docket # 46, ¶ 37.*  Thus, the Plaintiffs have failed to allege facts giving rise to the existence of any fiduciary duty owed to them by FA, and FA is entitled to dismissal of the fiduciary duty claim.

### C. CMS's Motion

With regard to the quiet title and fiduciary duty claims, the preceding analysis applies with nearly equal force to CMS's motion to dismiss. Like FA, CMS disclaims any interest in the property at issue, thereby entitling it to dismissal of the quiet title claim. Similarly, the Plaintiffs have failed to allege any facts suggesting that CMS owed a fiduciary duty to them. Indeed, CMS is not even mentioned in the factual allegations comprising the fiduciary duty claim, and to the extent that the Plaintiffs seek to hold CMS liable for the acts of its principal, Ocwen, it is clear that the alleged fiduciary duty owed by Ocwen arose out of efforts by Ocwen to collect on the debt owed by the Plaintiffs. *Docket* # 46, ¶ 139, 140. By the time of such collection efforts, the Plaintiffs were clearly in an adversarial position to Ocwen and CMS, and could hardly be said to repose any special trust or confidence in CMS at that point. *See Wells Fargo*, 872 P.2d at 1365. Thus, CMS is entitled to dismissal of the breach of fiduciary duty claim against it.

The FDCPA claim presents a more complicated situation, however. Although captioned solely as a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), CMS does not argue that the FDCPA claim asserted in the Amended Complaint is <u>facially</u> deficient. Rather, it contends that the facts alleged by the Plaintiffs – specifically, the fact that the Plaintiffs requested verification of the debt – are untrue. In support of such a contention, CMS reaches outside the four corners of the Amended Complaint, relying on the attached affidavit of Deanne Stodden. In doing so, CMS's motion requires that the Court either disregard the attached evidentiary material, or elect to treat the motion as one pursuant to Fed. R. Civ. P. 56, and to give all parties the opportunity to present all material pertinent to a Rule 56 motion. *See* Fed. R. Civ. P. 12(b). Although both parties cite to Rule 56 in their subsequent briefs, the Court is reluctant to simply convert CMS's

motion to one for summary judgment and rule on it on the existing briefs without having expressly given the parties notice of its intent to do so and after a sufficient time to conduct discovery followed by an opportunity to file any supplemental evidentiary material.

Accordingly, the Court instead elects to simply disregard the Stodden affidavit and adjudicate CMS's motion as one made under Fed. R. Civ. P. 12(b)(6). CMS argues that the elements of a FDCPA claim are that: (i) the Plaintiffs requested verification of a debt; and (ii) CMS failed to provide it with such. Examining the Amended Complaint, the Court finds that the Plaintiffs have adequately pled such a claim. *Docket* # 46, ¶ 74-75. Accordingly, CMS's motion to dismiss with respect to the FDCPA claim is denied. If CMS believes that the Plaintiffs cannot ultimately prove the facts they have alleged, it is free to file a properly-supported Rule 56 motion as such.

## CONCLUSION

For the foregoing reasons, FA's Motion to Dismiss **(# 53)** is **GRANTED** in its entirety. All claims against Defendant FA are **DISMISSED**,[7] and the caption of this case is amended to

---

[7]Ordinarily, a granting of a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) should also grant of leave to replead any of the deficient claims if the plaintiff requests. *See Calderon v. Kansas Dept. of Social and Rehab. Svcs.*, 181 F.3d 1180, 1185-86 (10th Cir. 1999). However, a perfunctory request for an opportunity to cure unspecified pleading defects in a response brief does not typically constitute a sufficiently specific request for leave to amend. *Id.* at 1186, *citing Glenn v. First Nat'l Bank*, 868 F.2d 368, 370 (10th Cir.1989). At best, the Plaintiffs have made only such unspecific requests for leave to amend. *Docket* # 69, ¶ 24 ("If this submission is found wanting in one or more particulars, it is incumbent upon the Court to inform Plaintiffs fo the deficiencies, their specifics and assist the Plaintiffs in correcting the submission, and the Plaintiffs hereby respectfully request such assistance"). Moreover, it is clear to the Court that no facts could be pleaded to revive the quiet title action as against either Defendant here, and the Plaintiffs various claims against FA turned almost exclusively on a patently frivolous assumption, suggesting that leave to replead those claims would be futile. Accordingly, the Court will not *sua sponte* grant the Plaintiffs leave to replead. If the Plaintiffs believe that they can assert proper claims against either FA or CMS, they may file a properly-

delete Defendant FA.  CMS's Motion to Dismiss **(# 77)** is **GRANTED IN PART**, insofar as the quiet title and fiduciary duty claims against CMS as **DISMISSED**, and **DENIED IN PART**, insofar as the Plaintiffs have adequately pled a FDCPA claim against CMS.

Dated this 2nd day of April, 2007

**BY THE COURT:**

_____

Marcia S. Krieger
United States District Judge

---

supported motion to amend pursuant to Fed. R. Civ. P. 15(a).  The Plaintiffs are advised, however, that their *pro se* status does not relieve them from the obligations of Fed. R. Civ. P. 11, and should they subsequently make assertions that lack a sufficient basis in either law or fact, the Court will consider imposing sanctions against them, including, but not limited to, monetary sanctions and/or the dismissal of claims or the suit as a whole.