IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 06-cv-01502-MSK-KLM

CONNIE RICOTTA, and
BRUCE ROGERS,

       Plaintiffs,

v.

OCWEN LOAN SERVICING, LLC,
WELLS FARGO BANK, N.A., Successor by Merger to Wells Fargo Bank Minnesota, N.A., as
  Trustee f/k/a Norwest Bank Minnesota, N.A. as Trustee for the Holders of the Structured Asset
  Securities Corporation Amortizing Residential Collateral Trust Mortgage Pass-Through
Certificates, Series 2002-BC5, and
UNKNOWN OWNER OF THE EVIDENCE OF THE DEBT AND/OR
  OWNER OF "THE NOTE",

       Defendants.

---

## OPINION AND ORDER GRANTING, IN PART,
## MOTIONS FOR SUMMARY JUDGMENT

---

**THIS MATTER** comes before the Court pursuant to Former Defendant Finance America

LLC's Motion for Entry of Judgment (**# 106**); Defendant Ocwen Loan Servicing, LLC's

("Ocwen") Motion for Summary Judgment (**# 117**), the Plaintiff's response (**# 136**), and Ocwen's

reply (**# 143** ; Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") Motion for Summary

Judgment (**# 118**), the Plaintiffs' response (**# 137**), and Wells Fargo's reply (**# 142**); the Plaintiffs'

Motion for Summary Judgment (**# 130**), and Ocwen and Wells Fargo's response (**# 175**); Wells

Fargo's Motion to Substitute (**# 139**) an exhibit to its summary judgment motion (**# 139**), the

Plaintiffs' response (**# 141**), and Wells Fargo's reply (**# 145**); Ocwen and Wells Fargo's Motion to

Seal (# **179**); and the Plaintiffs' Objections (# **183**) to the January 25, 2008 Order (**#182**) of United States Magistrate Judge Kristen L. Mix denying the Plaintiffs' Motion to Reopen Discovery (# **177**).

## **FACTS**

According to the Amended Complaint (# **46**), the Plaintiffs are owners of a parcel of residential real property in Breckenridge, Colorado. On January 17, 2002, the Plaintiffs refinanced their mortgage on the property through Former Defendant Finance America, LLC ("FA").[1] In conjunction with this refinancing, the Plaintiffs executed a Deed of Trust on the property in favor of Former Defendant Mortgage Electronic Registration System, Inc.[2] ("MERS"). The Plaintiffs contend that on January 18, 2002, Plaintiff Bruce Rogers attempted to rescind the refinance pursuant to 12 C.F.R. § 226.23(a)(1), but that the Defendants failed to respond to the recision request. The Amended Complaint goes on to state that Plaintiff Rogers "thought that the recision was ineffective, and acquiesced to the making of mortgage payments for over three years."

In or about June 14, 2006, Ocwen, the entity retained to service the loan, notified the Plaintiffs that the loan was in default. The Plaintiffs commenced this action *pro se* on August 2, 2006. The Amended Complaint asserts several causes of action: (i) a claim against all Defendants seeking to quiet title to the property, and asserting that no Defendant can claim title under the

---

[1] The Plaintiffs dispute ever agreeing to the refinance, but acknowledge that "it is assumed that Defendants will succeed in persuading this Court that Plaintiffs did so agree and sign." The remainder of the Amended Complaint presumes that such an agreement exists.

[2] The Plaintiffs stipulated to dismissal (# **172**) of all claims against MERS, and MERS was dismissed (# **173**) from this action. Accordingly, the Clerk of the Court shall terminate Docket # 119, MERS' Motion for Summary Judgment, which is otherwise listed as pending.

Deed of Trust, because the Plaintiffs rescinded the transaction; (ii) a claim under the Real Estate

Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, against Ocwen, alleging that

Ocwen failed to timely respond to the Plaintiffs' request for information about the status of the

loan; (iii) a claim under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et*

*seq.*, against Ocwen and Wells Fargo, in that these Defendants violated 15 U.S.C. § 1692g(b) by

failing to obtain verification of the debt once the Plaintiffs disputed it, and by continuing their

efforts to collect the debt; (iv) several contractual-type claims against FA, which this Court has

since dismissed **(# 88)**; and (v) a claim for breach of fiduciary duty against all Defendants, in that

the Defendants each owed the Plaintiffs a duty to "inform them of other contracts that it had with

other parties affecting [the Plaintiffs'] loan," to release any security interest on the property once

the loan was rescinded, and to cease collection efforts once the debt was disputed.

All of the parties have now moved for summary judgment, and there are several collateral

motions pending. The Court will address each motion in detail below.

## ANALYSIS

### A. Standard of Review

In evaluating all of the pending motions, the Court has construed the *pro se* Plaintiffs'

pleadings and filings liberally in conjunction with *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)

and *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991). Liberal construction requires the

Court to overlook the Plaintiffs' failure to cite proper legal authority, their confusion of various

legal theories, their poor syntax and sentence construction, or their unfamiliarity with pleading

requirements. *Hall*, 935 F.2d at 1110. However, *pro se* status does not relieve the Plaintiffs of

the duty to comply with the various procedural rules or the requirements of the substantive law.

In these regards, the Court must treat the Plaintiffs according to the same standard as counsel licensed to practice law before the bar of this Court. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

### B.  Summary Judgment Motions

Ocwen **(# 117)**, Wells Fargo **(# 118)**, and the Plaintiffs **(# 130)** each move for summary judgment.  Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  Substantive law governs what facts are material and what issues must be determined.  It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989).  A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248.  When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(e). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See*

*Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999).  If there is a genuine dispute as to a material fact, a trial is required.  If there is no genuine dispute as to any material fact, no trial is required.  The court then applies the law to the undisputed facts and  enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove.  If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required.  If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

This case involves cross-motions for summary judgment.  "Because the determination of whether there is a genuine dispute as to a material factual issue turns upon who has the burden of proof, the standard of proof and whether adequate evidence has been submitted to support a *prima facie* case or to establish a genuine dispute as to material fact, cross motions must be evaluated independently."  *In re Ribozyme Pharmaceuticals, Inc., Securities Litig.*, 209 F. Supp. 2d 1106, 1112 (D. Colo. 2002); *see also Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000); *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) ("Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.").

1. <u>Ocwen's Motion</u>

Ocwen moves for summary judgment on all four of the Plaintiffs' claims asserted against it, arguing: (i) that Ocwen disclaims any interest in the Plaintiffs' property, entitling it to dismissal of the quiet title claim; (ii) that the Plaintiffs' communications with Ocwen were insufficient to invoke any rights under RESPA, and that, in any event, the Plaintiffs suffered no injury as the result of any RESPA violation; (iii) that Ocwen is not a "debt collector" for purposes of FDCPA; and (iv) that the Plaintiffs cannot establish that Ocwen owed them any fiduciary duty. In response (**# 136**), the Plaintiffs primarily contend that the documents attached as exhibits by Ocwen are not properly authenticated.[3] In addition, the Plaintiffs assert that certain facts are disputed, pointing only to the allegations in the Amended Complaint.

As to the quiet title claim, the Court has previously observed that a party's disclaimer of any interest in the subject property warrants dismissal of that claim against the disclaiming party. *See Docket* # 88 at 5-6; C.R.C.P. 105(c). Because Ocwen disclaims any interest in the title to the Plaintiffs' property, the Plaintiffs' quiet title claim against Ocwen is dismissed.

As to the RESPA claim, RESPA provides that an entity like Ocwen, to which FA assigned the Plaintiffs' loan for servicing,[4] is obligated to respond to "qualified written requests" for information from the Plaintiff. 12 U.S.C. § 2605(e). A "qualified written request" is one which is in writing, includes sufficient information to permit the servicer to identify the borrower and

---

[3]The Court summarily rejects the Plaintiffs' strained arguments that the exhibits submitted in support of the Defendants' motions are not properly authenticated.

[4]As defined in RESPA, "servicing" a loan means receiving periodic payments from the borrower, making payment of principal and interest to the lender, and making escrow payments to the appropriate entities. 12 U.S.C. § 2605(*i*)(3).

account, and which "includes a statement of the reasons for the belief of the borrower . . . that the account is in error or provides sufficient detail to the services regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). A servicer who receives a qualified written request is required to investigate the request and respond to the borrower with appropriate information or explanation of the account status within 60 business days. 12 U.S.C. § 2605(e)(2). RESPA provides that non-compliance with these requirements entitles a borrower to recover "any actual damages to the borrower as a result of the failure." 12 U.S.C. § 2605(f)(1).

Thus, in this context, the Plaintiffs' RESPA claim requires them to prove the following elements: (i) that they sent a "qualified written request" to Ocwen; (ii) that Ocwen failed to adequately respond to that request within 60 business days; and (iii) that the Plaintiffs were damaged as a result. Here, Ocwen contends that the Plaintiffs cannot show that they made a qualified written request, nor that they suffered any damages from not receiving a response to any such request.

Ocwen identifies two documents it received from the Plaintiffs: a 21-page document, received by Ocwen on or about April 2006, requesting a wide variety of information; and request for a payoff statement, received by Ocwen on or about May 3, 2006.

The April 2006 document is entitled "RESPA Qualified Written Request, Complaint, Dispute of Debt & Validation of Debt Letter, TILA Request." *Docket* # 117, Ex. H. The document begins by stating "I am writing to you regarding the accounting and servicing of this alleged mortgage and the need for a good clear and clean hands understanding and clarification from you of various sale, transfer, funding source, legal and beneficial ownership, charges, credits, debits, transactions, reversals, actions, payments, analyses and records relating to the servicing of

7

this account from its origination to the present date." The letter goes on to "demand absolute 1st hand evidence from you of the original uncertificated or certificated security regarding" a specific account; demanded "a chain of transfer from you to wherever the security is now," and requested an "investigation and audit of this account since its inception to validate the debt you currently claim I owe." The letter proceeded to request "copies of pertinent documents to be provided to me," along with "answers, <u>certified</u> in writing, to various servicing questions" (emphasis in original), then listed 14 pages of categories of documents or specific questions that the Plaintiff requested that Ocwen answer. Some of the document requests and questions related to specific transactions on the Plaintiffs' account, such as requests for copies of cancelled payment checks, statements as to late fees that had been imposed, and so on. However, a large number of the requests were of a more abstract nature, requesting extensive details regarding Ocwen's agreements with "any governmental sponsored entity," identification of "each account accouting and servicing system" used by Ocwen, explanations as to why a Deed of Trust may or may not have been recorded in county records, information regarding Ocwen's "policy on [Broker Price Opinions]," and so on. On April 25, 2006, Ocwen issued a form response stating that Ocwen would conduct research into the Plaintiffs' request. However, it does not appear that Ocwen ever responded substantively to the Plaintiffs' requests.

As to the May 2006 request for a payoff statement, Ocwen has produced a payoff statement that it provided to the Plaintiffs on May 8, 2006.

Taking the evidence in the light most favorable to the Plaintiffs on Ocwen's motion, the Court finds that the Plaintiffs can satisfy the first element of a RESPA claim, insofar as the evidence indicates that, at least in part, the Plaintiffs' April 2006 letter constitutes a "qualified

written request" under 12 U.S.C. § 2605(e)(1)(B). The document is in writing, contains the

Plaintiffs' names and account number, and "provides sufficient detail to [Ocwen] regarding other

information sought by" the Plaintiffs. *Id.* Although overbroad and burdensome in many respects,

the April 2006 letter did request some information that would appear to fall within RESPA. For

example, the Plaintiffs requested detailing of "every credit" and "every debit" that was posted to

the account, information as to late fees and interest that had been charged to the account, copies

of certain records relating to their account, and so on. These appear to be types of information

that a borrower is entitled to request under RESPA. *See generally In re Maxwell*, 281 B.R. 101,

122-23 (Bankr. D. Mass. 2002) (finding RESPA violation where servicer failed to respond to

request for itemized payoff statement and copies of settlement statements and Truth In Lending

Act disclosure statements, among others). The fact that these requests were contained within a

broader "screed," as Ocwen characterizes it, does not operate to relieve Ocwen of the duty to

respond to the few legitimate informational requests contained therein. The April 2006 letter,

although bloated, is not so overwhelming as to prevent Ocwen from extracting and responding to

those portions that seek information that the Plaintiffs are entitled to under RESPA. Thus, the

Court finds that there is at least a genuine issue of fact as to whether the Plaintiffs made a

"qualifying written request" of Ocwen in April 2006.[5]

Ocwen contends that the Plaintiffs cannot show that they sustained any actual damages as

a result of any RESPA violation. This Court has located no authority that directly addresses

whether a RESPA plaintiff must prove that he or she sustained actual damages as an element of

---

[5]The Court finds that the undisputed evidence establishes that Ocwen properly responded to the Plaintiffs' May 2006 request for a payoff statement, and the Plaintiffs have not come forward with any evidence that they made any other qualified request under RESPA.

the claim, but at least one court has implied as much, *In re Holland*, 374 B.R. 409, 443 (Bankr. D. Mass. 2007) (finding that borrowers failure to plead the existence of actual damages and a causal link between the servicer's failure to provide information and those damages was "problematic," and would require amendment of the complaint), and another court, in dicta, has suggested that a failure to prove actual damages caused by the violation would be fatal to a RESPA claim. *Byrd v. Homecomings Financial Network*, 407 F.Supp.2d 937, 946 (N.D. Ill. 2005). The Court also notes that RESPA itself sets forth the remedies that are available to an aggrieved borrower, and the statute makes no provision for relief other than an award of actual damages. In the absence of authority to the contrary, the Court finds that a RESPA plaintiff must plead and prove, as an element of the claim, that he or she suffered some actual damage as a result of the alleged RESPA violation.

Here, the Plaintiffs summary judgment response does not respond directly to Ocwen's contention that the Plaintiffs cannot establish any actual damage that they sustained as a result of Ocwen's failure to supply the information reasonably requested in the April 2006 letter. The Plaintiffs generally assert that their Amended Complaint should be treated as an affidavit, and thus, that the allegations in the Amended Complaint should be deemed to be evidentiary responses under Fed. R. Civ. P. 56(c).

Assuming, without necessarily finding, that the Plaintiff's Amended Complaint is evidentiary in nature, the Court nevertheless finds nothing therein that would amount to well-pleaded facts showing that the Plaintiffs incurred actual damages as a result of Ocwen's failure to respond to their April 2006 requests for information. The Amended Complaint merely states that "[A]s a result of [Ocwen's] wrongful actions, Plaintiffs have suffered actual and consequential

10

damages exceeding $75,000.  This assertion is merely a conclusion, not a statement of any actual

<u>fact</u>, and a party cannot defeat summary judgment by resting on bald, conclusory statements.  *See*

*generally  BancOklahoma Mort. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1097 (10th Cir.

1999).

Moreover, Plaintiff Rogers, when asked at his deposition for the factual basis for the

Amended Complaint's allegation that the Plaintiffs suffered actual damages as a result of Ocwen's

RESPA violation, stated only that "I'm not quite certain why I related it to the lack of response,

but I'd have to go back and research and determine that."  *Docket* # 117-3 at 16.

Thus, the Court finds that the Plaintiffs have failed to carry their burden of coming

forward with evidence of any injury or damage that they sustained as a result of the alleged

RESPA violation that Ocwen in failed to respond to any reasonable requests for information in

the April 2006 letter.  Accordingly, Ocwen is entitled to summary judgment on the Plaintiffs'

RESPA claim.

Next, Ocwen moves for summary judgment with regard to the Plaintiffs' FDCPA claim.

The FDCPA's restrictions apply only to a "debt collector," which is defined as "any person . . .

who regularly collects or attempts to collect, directly or indirectly, debts owed or due to be owed

another."  15 U.S.C. § 1692a(6).  Ocwen argues that it falls within an exception to that definition,

which excludes from the definition of "debt collector" "any person collecting or attempting to

collect any debt owed . . . another [if] a debt was not in default at the time it was obtained by such

person."  15 U.S.C. § 1692a(6)(F)(iii).  This exception is apparently intended to exempt from the

FDCPA's requirements persons who acquire a debt for reasons other than for delinquency-based

debt-collection purposes. *See e.g. Brown v. Morris*, 243 Fed.Appx. 31, 34-35 (5th Cir. 2007) (unpublished).

Ocwen contends that, at the time it received assignment of the Plaintiffs' loan for servicing in January 2002, the loan was not in default, and thus, Ocwen is exempted from the definition of "debt collector." The Plaintiffs did not specifically respond to this argument in their summary judgment response, but it appears to be undisputed that Ocwen assumed servicing of the Plaintiffs' loan in January 2002, at a time when the loan was not in default. Accordingly, Ocwen was not a "debt collector" under 15 U.S.C. § 1692a(6)(F)(iii), and thus, is entitled to summary judgment on the Plaintiffs' FDCPA claim. *See Johnson v. Sallie Mae Servicing Corp.*, 102 Fed.Appx. 484, 487 (7th Cir. 2004) (unpublished).

Finally, Ocwen seeks summary judgment on the Plaintiffs' breach of fiduciary duty claim, alleging that the Plaintiffs cannot show that Ocwen owed them any particular fiduciary duties, nor that Ocwen breached any such duty. Ocwen reads the Plaintiffs' Amended Complaint to assert two alleged fiduciary duties owed to them by Ocwen: a duty "to cease collection attempts" once FA received Plaintiff Rogers' recision of the loan, and a duty "not to demand sums not lawfully due." It appears that the sole basis for the Plaintiffs' contentions that Ocwen was collecting sums "not lawfully due" is the Plaintiffs' assertion that the loan was rescinded, and thus, both of these alleged duties collapse into a single assertion that Ocwen owed them a duty not to seek to collect on the allegedly-rescinded loan.

As discussed in the Court's prior order dismissing claims against FA, Colorado law generally does not find a fiduciary duty to exist between a lender (or here, a lender's agent) and borrower, unless the nature of the business relationship was such that it impelled or induced one

party to relax the care and vigilance it would ordinarily exercise in dealing with a stranger. *Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc.*, 872 P.2d 1359, 1365 (Colo. App. 1994). For example, such a duty might arise where the borrower has reposed particular trust in the lender along with an acceptance or invitation of such trust on the part of the lender, *e.g.* where the lender and borrower also share a mutually-accepted relationship as advisor-advisee. *Id.* Neither the Amended Complaint nor anything in the Plaintiffs' summary judgment response suggests that the Plaintiffs' relationship with Ocwen was anything more than arm's length. Because the Plaintiffs have not come forward with evidence suggesting that their relationship with Ocwen was so atypical of the lender-borrower relationship as to give rise to a fiduciary duty under Colorado law, Ocwen is entitled to summary judgment on this claim.

Accordingly, Ocwen's Motion for Summary Judgment is granted in its entirety.

### 2. Wells Fargo's motion

Wells Fargo moves for summary judgment **(# 118)** on all claims against it, arguing: (i) with regard to the quiet title claim, it has a valid claim against the Plaintiffs' property by virtue of being the assignee of the Deed of Trust, and that the Plaintiffs' quiet title claim is actually an untimely claim for recision under the Truth In Lending Act; (ii) with regard to the FDCPA claim, that Wells Fargo is not a "debt collector" as defined in the statute; and (iii) with regard to the breach of fiduciary duty claim, that the Plaintiffs cannot establish the existence of any such duty owed by Wells Fargo to them. The Plaintiffs respond **(# 137)** with substantially the same response they tendered with regard to Ocwen's motion – namely, disputing the sufficiency of the authentication of certain documents tendered by Wells Fargo as exhibits, and relying on the allegations in the Amended Complaint to dispute the facts proffered by Wells Fargo. In addition,

the Plaintiffs respond to Wells Fargo's argument on the quiet title claim by contending that, to the extent their quiet title claim could be considered a recision claim under the Truth In Lending Act, the action is timely.

Although the underlying facts vary slightly, the Court's analysis of the FDCPA and breach of fiduciary duty claims with regard to Ocwen is sufficient to dispose of those same claims by the Plaintiffs against Wells Fargo. For substantially the same reasons stated above, Wells Fargo is entitled to summary judgment on the Plaintiffs' FDCPA claims and breach of fiduciary duty claims.

Turning to the quiet title claim, Wells Fargo argues that it has a valid encumbrance on the Plaintiffs' title by virtue of the Deed of Trust. The Deed was initially executed[6] by the Plaintiffs in favor of MERS. On October 10, 2006, MERS assigned its interest in the Deed of Trust to Wells Fargo. *See Docket* # 120, Ex. B. The Plaintiffs' summary judgment response takes issue with Wells Fargo's failure to produce a sufficient document demonstrating assignment of the Plaintiffs' note from FA to Wells Fargo, but this mistakes the issue. Under Colorado law, it is the Deed of Trust, not the mortgage note or any other document, that serves as an encumbrance on a property's title. *See generally Lakeside Ventures, LLC v. Lakeside Development Co.*, 68 P.3d 516, 519 (Colo. App. 2002) (Deed of Trust is security for the underlying note, and may be foreclosed upon if the terms of the note are not honored). Thus, whether Wells Fargo has shown

---

[6]The Plaintiffs apparently contended in their deposition that they did not "sign" the Deed of Trust and other documents, apparently construing the verb "sign" to not only refer to endorsing the documents with their signature (which they admit to having done), but also to contain elements of conceding the documents to be authentic, etc. The Plaintiffs have not raised this argument in their summary judgment motion or responses, and the Court understands them to have waived it. In any event, the Court would summarily reject such an argument as frivolous.

that the mortgage note itself was properly assigned is irrelevant; the undisputed evidence shows that MERS assigned the Deed of Trust to Wells Fargo, and thus, Wells Fargo appears to hold a valid encumbrance on the Plaintiffs' title.

The issue then becomes whether the Plaintiffs rescinded the mortgage, and if so, what the effect is of that recision. The right to rescind the initial mortgage transaction arises statutorily, out of the Truth In Lending Act, 15 U.S.C. § 1635. Within 3 days of the transaction, the borrower can rescind the transaction by notifying the lender of his intention to do so. 15 U.S.C. § 1635(a). Upon a recision, any security interest created by the transaction immediately becomes void. 15 U.S.C. § 1635(b). The lender must return any money or property tendered by the borrower as earnest money, down payments, etc., and shall take action to terminate the security interest. *Id.* Once the creditor has done so, the borrower is obligated to return any property tendered by the lender. *Id.*

Wells Fargo argues that, even if the Plaintiffs effectively rescinded the transaction in January 2002, the Truth In Lending Act's statute of limitations bars this action. Wells Fargo explains that the Truth In Lending Act has a one-year statute of limitations on claims based on a creditor's failure to comply with any requirement under the Act, including any requirement of the recisionary process. 15 U.S.C. § 1640(a), (e). This argument might be availing if the Plaintiffs were suing for damages under the Act, arising from Wells Fargo's (or its predecessors') failure to comply with some provision of the Truth In Lending Act. 15 U.S.C. § 1640(a). However, the Court does not construe the Plaintiffs' quiet title action as such a suit. It is clear that the Plaintiffs are primarily seeking a declaration that Wells Fargo's Deed of Trust is void as rescinded, and are not expressly claiming damages resulting from some violation of the Truth In Lending Act. An

action seeking to quiet title is an equitable action *in rem*, not an action at law for damages. *Keith v. Kinney*, 961 P.2d 516, 518-19 (Colo. App. 1997). Because the Truth In Lending Act does not contemplate the relief that the Plaintiffs appear to seek, this Court will not construe their claims as arising under the Truth In Lending Act. Rather, the Court understands the Plaintiffs to be bringing a classic quiet title action under C.R.C.P. 105(a), based on a contention that any interest held by Wells Fargo was rendered void by operation of the Plaintiffs' recision of the loan as permitted by 15 U.S.C. § 1635.

In this regard, there is at least a genuine issue of fact requiring trial of the Plaintiffs' quiet title claim. Wells Fargo asserts that its interest in the Plaintiffs' property arises out of the Deed of Trust. The Plaintiffs contend that the Deed of Trust was rendered void as a matter of law under 15 U.S.C. § 1635(a) when Plaintiff Rogers rescinded the loan. Accordingly (and for the reasons set forth below), a trial of this claim is required. Thus, Wells Fargo's Motion for Summary Judgment is granted in part and denied in part.

### 3. Plaintiffs' Motion

The Plaintiffs have also moved for summary judgment **(# 130)**. The Court notes that this motion is untimely. The Scheduling Order **(# 82)** set a deadline of June 25, 2007 for the filing of dispositive motions. The Plaintiffs' summary judgment motion was filed on July 30, 2007. For this reason alone, it is denied.

In any event, the Court would also deny the Plaintiffs' motion on the merits. Because the Court has already granted summary judgment to the Defendants on all claims except the quiet title claim against Wells Fargo, the Court would consider the Plaintiffs' motion only as it relates to that claim. As discussed above, the Plaintiffs' quiet title claim is premised upon the contention

that Plaintiff Rogers timely rescinded the loan transaction, thereby voiding any Deed of Trust now held by Wells Fargo. Wells Fargo has come forward with some evidence indicating that the FA never received the Plaintiffs' recision, thereby raising an issue of fact as to whether any such recision was effectively made. In addition, Wells Fargo has raised a defense of waiver, insofar as the Plaintiffs proceeded to make payments on the allegedly-rescinded loan. Whether the Plaintiffs' conduct operates as a waiver is a matter that will require trial. Finally, the Court has some doubt as to whether the Plaintiffs' claim of recision can be harmonized with the provisions of the Truth In Lending Act, *see* 15 U.S.C. § 1635(e)(1) (no right of recision where transaction involves a residential mortgage); 12 C.F.R. § 226.23(c) (lender shall not disburse funds or effectuate the transaction until the recision period has passed), further making summary judgment on this claim inappropriate.

Accordingly, the Plaintiffs' Motion for Summary Judgment is denied.

### C. Wells Fargo's Motion to Substitute Exhibit

Wells Fargo moves to substitute (# 139) an affidavit for one that it attached to its summary judgment motion. Wells Fargo explained that it inadvertently attached the wrong affidavit to its filing. The Plaintiff opposes (# 141) the request, arguing that Fed. R. Civ. P. 60(a) does not allow the Court to correct mistakes by litigants, and that the cases cited by Wells Fargo are inapposite.

The Court need not engage in a labored analysis of this issue, as the Plaintiffs do not contend that the substitution would cause them any prejudice. Whether the Court's power to do so arises from a Rule of Civil Procedure or from the Court's inherent authority to oversee the litigation, Wells Fargo's motion to substitute is granted.

### D.  Motion to Seal

Ocwen and Wells Fargo move to seal (# 179) both their response (# 181) to the Plaintiffs'
Motion to Extend Discovery, and the exhibit supporting that response.  They argue that the
documents reference a Securitization Servicing Agreement ("SSA") that is "a confidential and
proprietary document containing trade secret information," although the motion does not explain
that assertion in any greater detail.  The motion to seal goes on to state that Ocwen and Wells
Fargo have produced the SSA subject to a Protective Order.

The Supreme Court acknowledged a common-law right of access to judicial records in
*Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597 (1978).  This right is premised upon
the recognition that public monitoring of the courts fosters important values such as respect for
the legal system.  *See In re Providence Journal Co.*, 293 F.3d 1, 9 (1st Cir. 2002).  Judges have a
responsibility to avoid secrecy in court proceedings because "secret court proceedings are
anathema to a free society."  *M.M. v. Zavaras*, 939 F. Supp. 799, 801 (D. Colo. 1996) (J. Kane).

There is a presumption that documents essential to the judicial process are to be available
to the public, but they may be sealed when the public's right of access is outweighed by interests
which favor nondisclosure.  *See United States v. McVeigh*, 119 F.3d 806, 811 (10th Cir. 1997).
It is within the district court's discretion to determine whether a particular court document should
be sealed.  *See Nixon,* 435 U.S. at 599.  Only in rare cases is the sealing of documents appropriate
– for example, cases involving intensely personal issues such as abortion or birth control, or cases
pertaining to the welfare of abandoned or illegitimate children.  *See Doe v. F.B.I.*, 218 F.R.D.
256, 259 (D. Colo. 2003).  Otherwise, it is critical that the public be able to review the factual
basis of this Court's decisions and evaluate the Court's rationale so that it may be confident that

the Court is functioning as a neutral arbiter. *Cf. McVeigh*, 119 F.3d at 814. In this analysis, the parties' agreement that a particular document is confidential is irrelevant, as is the fact that a document was subject to a protective order during discovery. Documents subject to discovery are not customarily filed with the Court and thus are not available to the public. As to those documents which are filed with the Court, the parties are not in a position to finally determine whether the public has an interest in them. Documents filed with the Court are presumptively public, and absent a showing of compelling reasons, the Court will not seal them.

Here, the Court has reviewed Ocwen and Wells Fargo's response to the Plaintiffs' Motion to Reopen Discovery and sees nothing therein that would warrant sealing. The SSA is only mentioned in passing in the response, which states that "Ocwen and Wells Fargo as Trustee fully complied with the September Order, producing a document defendants had previously withheld due to confidentiary concerns ([the SSA]), as well as another document referenced as an exhibit to the SSA." The response makes no substantive reference to the contents of the SSA whatsoever, and thus, the Court sees no compelling reason why the response should be sealed.

The Court has also reviewed the exhibit attached to Ocwen and Wells Fargo's response. That exhibit is the Plaintiffs' Second Request for Production of Documents, and requests various documents "referred to in Exhibits A through E of the [SSA]." Although it is difficult to discern whether these requests relate to the SSA, the Plaintiffs also request copies of servicing agreements between Ocwen and/or Wells Fargo and certain other named corporate entities. Arguably, the identities of the corporate entities might be trade secrets, in that the identities of Ocwen and/or Wells Fargo's business partners may be information of proprietary value. Although there is scant evidence in the record to support such a contention, the Court further notes that the

19

exhibit is of relatively little public value, as the issue before the Court on the Plaintiffs' Motion to Reopen Discovery did not turn in meaningful part on the fact that the Plaintiffs had made a request for certain kinds of documents. Because the exhibit to Ocwen and Wells Fargo's response is of little public value, and there is arguably some trade secret information contained within it, the Court will direct that the exhibit, and only the exhibit, be subject to seal.

### E. Plaintiffs' Objections to Magistrate Judge's Ruling

On January 4, 2008, the Plaintiffs moved (**# 177**) to reopen discovery to follow up on information that had been revealed to the Plaintiffs with Ocwen and Wells Fargo's October 2007 production of the SSA. On January 25, 2008, Magistrate Judge Mix denied (**# 182**) the Plaintiffs' motion, finding that the Plaintiffs had not shown that they had acted diligently in attempting to obtain the discovery previously. The Plaintiffs filed timely Objections (**# 183**) to Magistrate Judge Mix's Order under Fed. R. Civ. P. 72(a). The Objections contain no substantive argument, and merely incorporate by reference the Plaintiffs' prior motion papers.

A party seeking review of a Magistrate Judge's ruling under Fed. R. Civ. P. 72 must identify the specific factual findings or conclusions of law by the Magistrate Judge to which the party objects. *U.S. v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996). An objection that merely directs the District Judge to the party's prior briefing is insufficiently specific. *Id.* In such circumstances, the party is deemed to have waived its objections. Here, the Court finds that the Plaintiffs' Objections fail to specifically identify the allegedly erroneous findings or conclusions by Magistrate Judge Mix, and thus, the Court deems the Plaintiffs to have waived any objections to that ruling.

In any event, rulings on non-dispositive issues by a Magistrate Judge are reviewed by this Court pursuant to Fed. R. Civ. P. 72(a), and will be reversed only if they are "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997); *Ariza v. U.S. West Communications, Inc.*, 167 F.R.D. 131, 133 (D. Colo. 1996). Accordingly, the Plaintiffs' Objections would be overruled unless the Court finds that the Magistrate Judge abused her discretion or, if after viewing the record as a whole, the Court is left with a "definite and firm conviction that a mistake has been made." *Ariza,* 167 F.R.D. at 133, *citing Ocelot Oil Corp. v. Sparrow Indus.,* 847 F.2d 1458, 1464 (10th Cir.1988).

Here, the Court would find nothing in Magistrate Judge Mix's ruling that is clearly erroneous or contrary to law. Moreover, because the only remaining claim is a straightforward quiet title claim against Wells Fargo, which has no apparent connection to the discovery the Plaintiffs seek to engage in, the Court would nevertheless affirm Magistrate Judge Mix's ruling in any event.

**F. FA's Motion for Entry of Judgment Pursuant to Rule 54(b)**

Former Defendant FA seeks entry of judgment in its favor pursuant to Fed. R. Civ. P. 54(b). Because the Court has disposed of all claims in this case, but for a factually-discrete quiet title claim against Wells Fargo alone, the Court finds no just reason for delay and will enter judgment in favor of FA and Ocwen.

## CONCLUSION

For the foregoing reasons, Former Defendant Finance America LLC's Motion for Entry of Judgment (**# 106**) is **GRANTED**, and judgment shall enter contemporaneously with this Order. Ocwen's Motion for Summary Judgment (**# 117**) is **GRANTED** in its entirety. Wells Fargo's

Motion for Summary Judgment (**# 118**) is **GRANTED IN PART**, insofar as the Court grants judgment to Wells Fargo on the Plaintiffs' FDCPA and breach of fiduciary duty claims, and **DENIED IN PART**, insofar as the Plaintiffs' quiet title claim against Wells Fargo requires trial. The Plaintiffs' Motion for Summary Judgment (**# 130**) is **DENIED**. Wells Fargo's Motion to Substitute (**# 139**) an exhibit to its summary judgment motion is **GRANTED**, and the tendered exhibit is deemed to replace Exhibit E to Wells Fargo's summary judgment motion. Ocwen and Wells Fargo's Motion to Seal (**# 179**) is **DENIED IN PART**, insofar as the Court finds that there is no compelling reason to seal the Opposition of Defendants Ocwen and Wells Fargo . . ., currently at Docket # 181, and **GRANTED IN PART**, insofar as the Court finds compelling reason to seal the associated exhibit. Accordingly, the Clerk of the Court shall **UNSEAL** the Opposition of Defendants Ocwen and Wells Fargo at Docket # 181, but the exhibit located at that docket entry shall remain sealed. The Plaintiffs' Objections (**# 183**) to the January 25, 2008 Order (**#182**) of United States Magistrate Judge Kristen L. Mix are **OVERRULED**, and Magistrate Judge Mix's Order is **AFFIRMED**. The Plaintiffs' Motion to Reopen Discovery (**# 177**) is **DENIED**. The Clerk of the Court shall terminate former Defendant MERS' motion at Docket # 119, pursuant to the dismissal of the claims against MERS (**# 173**).

Dated this 22d day of February, 2008

BY THE COURT:

_____

Marcia S. Krieger
United States District Judge

22